# WILLIAM REEDER, Respondent, *v.* BRUNO PIN-COLINI AND GUIDO PINCOLINI, Appellants.

No. 3278

October 24, 1939.                                   94 P. (2d) 1097.

*W. M. Kearney* and *Robert Taylor Adams,* for Appellants:

*Harold O. Taber* and *Bruce R. Thompson,* for Respondent:

## OPINION

By the Court, ORR, J.:

This is an appeal from a judgment awarding respondent $1,000 as damages for an injury sustained by him in the course of his employment by appellants, also from an order denying appellants' motion for a new trial.

Appellants were the proprietors of an establishment known as the Reno Public Market, situate in the city of Reno, Nevada. Respondent was employed in the said establishment as a butcher and as a clerk. His duties were to wait on customers in both the grocery and meat departments of the store and to assist in keeping the show case stocked with cut steaks.

On the 25th day of August 1936 respondent was engaged in cutting steaks for the show case. He finished cutting one piece of meat, took it to the ice box,

and picked up another. When respondent left for the ice box he laid the steak knife he had been using on the meat block, and upon his return he noticed it was not there, but was being used by Elmer Pincolini, a boy of the age of about fourteen years. Elmer was using the knife to bone meat, which said use was contrary to instructions issued by appellants, special knives being provided for that purpose. Respondent demanded the knife from the boy. Elmer handed the knife to respondent, and as respondent took hold of it the boy drew it back, which resulted in respondent sustaining a deep cut on his right index finger. As a result of said injury, respondent's finger became stiff, the tendons having been severed. In February 1937, upon the advice of a surgeon, respondent had the finger amputated at the second joint. Respondent testified that his efficiency as a butcher had been impaired by reason of the loss of the two joints of his finger, and that he had suffered pain as a result of the injury.

In this case appellants are deemed to have rejected the provisions of the Nevada industrial insurance act, Comp. Laws, sec. 2680 et seq., by reason of their failure to give the Nevada industrial commission a notice in writing of their election to accept the act.

Appellants base most of their argument upon the assumption that the trial court accepted their version of how the injury occurred, and rejected that of respondent. A reading of the opinion and findings of the trial court convinces us that it did just the opposite—accepted the evidence of respondent and rejected that of appellants. This is clearly shown by a comparison of the evidence given by respondent and the statement of the trial court in rendering its opinion.

Respondent testified: "I asked him for the knife and he handed it to me by the handle. I took hold of the knife and he gave it a jerk, cut my finger."

The court in its opinion said: "The evidence in this case establishes certain facts to the satisfaction of the

court; that the plaintiff (respondent) demanded the knife, reached for it and that the boy pulled the knife and cut the plaintiff's finger."

The testimony offered by appellants is very much at variance with the above statements.

The questions of law presented require a construction of section 1(b) of the Nevada industrial insurance act, being a portion of section 2680 N. C. L. 1929, and reads:

"(Employer not to escape liability, when.—Exception.—Burden of proof on employer.) § 1.(b). If an employer having the right under the provisions of this act to accept the terms, conditions and provisions thereof, shall fail to accept the same, as herein provided, every such employer shall be deemed to have rejected the terms, conditions, and provisions thereof, and in such case such employer shall not escape liability for personal injury by accident sustained by an employee of such employer when the injury sustained arises out of and in the usual course of the employment, because:

"(1) The employee assumed the risks inherent or incidental to, or arising out of, his or her employment; or the risks arising from the failure of the employer to provide and maintain a reasonably safe place to work, or the risks arising from the failure of the employer to furnish reasonably safe tools or appliances, or because the employer exercised reasonable care in selecting reasonably competent employees in the business;

"(2) That the injury was caused by the negligence of a coemployee;

"(3) That the employee was negligent, unless and except it shall appear that such negligence was wilful and with intent to cause the injury, or the result of intoxication on the part of the injured party;

"(4) In actions by an employee against an employer for personal injuries sustained, arising out of and in the course of the employment where the employer has rejected the provisions of this act, it shall be presumed that the injury to the employee was the first result, and

growing out of the negligence of the employer, and that such negligence was the proximate cause of the injury; and in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence."

■ It will be noted that by reason of the statute respondent entered the case fortified by certain presumptions arising therefrom, to wit: That the appellants were negligent; and that the negligence of the appellants was the proximate cause of the injury to respondent.

All that was necessary for respondent to allege and prove were the following essential elements of this case:

(1) The relation of employer and employee;

(2) Injury to respondent arising out of and in the course of his employment;

(3) Damages as the result of the injury:

(4) Rejection of the Nevada industrial insurance act by appellants.

■ Much of the argument of appellants is concerned with the assertion that the presumption of negligence arising from the statute is not absolute but places the burden on the employer of rebutting such presumption. Respondent admits such to be the force and effect of the statute, and we take the same view. Hunter v. Colfax Consolidated Coal Co., 175 Iowa 245, 154 N. W. 1037, 157 N. W. 145, L. R. A. 1917D, 15, Ann. Cas. 1917E, 803.

■■ Appellants contend that the trial court made its determination of this case in favor of respondent on the mistaken theory that the presumptions arising from the statute gave respondent an absolute right to recover, irrespective of whether or not the employer was negligent. In this we think appellants are in error. Appellants base their contention upon the statement of the trial court to the effect that aside from the presumptions arising from the statute respondent had not produced evidence showing negligence on the part of appellants. We say that aside from the presumptions arising from the statute respondent was under no duty to produce evidence showing negligence on the part of appellants,

unless the evidence produced in the case rebutted the presumptions. The trial court did not say that the evidence produced by respondent, considered together with the presumptions arising from the statute, which are evidence in his favor, does not constitute substantial evidence supporting the judgment. But whether or not the trial court had such an idea in mind we have no difficulty in so deciding. With the rejection of the testimony offered in support of appellant's theory, the presumptions stand unrebutted and are supported by respondent's testimony. Our consideration of the evidence leads to the conclusion that respondent's testimony standing alone shows negligence on the part of appellants. Elmer Pincolini was employed by appellants and was a coemployee of respondent. Section 2680 N. C. L., in addition to raising the presumptions heretofore considered, takes from the employer the defenses of contributory negligence, assumption of risk, and the fellow servant doctrine. The negligence of a coemployee is attributable to the employer and the employer is responsible therefor. This must be so, unless the great majority of employees are to be left without the benefit of the statute, for the reason that by far the largest employers of labor, corporations, act only through their employees, and negligence, other than that of the injured employee, would necessarily be that of a coemployee. O'Brien v. Las Vegas & T. R. Co., 9 Cir., 242 F. 850; Balen v. Colfax Consolidated Coal Co., 183 Iowa, 1198, 168 N. W. 246; Meyer v. Postal Telegraph-Cable Co., 196 Iowa, 165, 194 N. W. 273.

■■ Appellants seek to have the question of whether Elmer Pincolini was an employee of appellants determined by the definition contained in section 2688 N.C.L., and contend that it was not proved that the boy was entitled to recover any money "by reason of employment on an express or implied contract of hire." The boy is not claiming benefits under the act and the definition does not apply to him. Measured by the common

law rule, the evidence clearly establishes Elmer to have been an employee.

"The receipt of a stated wage is not essential to create the relation of master and servant, and it may exist, although the servant neither expects, nor is entitled to, any compensation." 39 C. J. 36, sec. 6.

"While the contract of service must be supported by a lawful consideration, it is not essential that there be a promise of payment of wages. Although no compensation be paid the relation of master and servant may yet exist. Hence the employer may be liable for the employee's wrongful act, notwithstanding the fact that the employee was serving without pay." 18 R. C. L. 495.

"It is not necessary that a formal or express employment on behalf of the master should exist, or that compensation should be paid by or expected from him. It is enough to render the master liable if the person causing the injury was in fact rendering service for him by his consent, express or implied." Haluptzok v. Great Northern Ry. Co., 55 Minn. 446, 57 N. W. 144, 146.

See, also, Napier v. Patterson, 198 Iowa, 257, 196 N. W. 73; Haluptzok v. Great Northern Ry., 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739.

■ We think a casual connection between the employment of this young boy of immature judgment, prone to indulge in playful pranks, without regard to or appreciation of lurking danger, placing him in a position of having access to and the use of dangerous instruments, such as the steak knife is shown to be, and the resulting injury to respondent, is apparent. Hence a presumption of negligence on the part of appellants in the hiring of the boy arises from the statute, and this presumption has not been rebutted.

The presumptions of negligence and proximate cause arising from the statute, together with respondent's testimony, constitute substantial evidence supporting the judgment. Such being the fact, under the well-settled rule we will not disturb it.

■ Appellants complain that the damages awarded

are excessive. From a consideration of all the circumstances of the case we do not think so. The amount seems to have been arrived at by the trial court after resort to such "yardsticks" as are available in measuring damages for similar injuries, and a careful application thereof to the facts in this case.

The judgment and order appealed from are affirmed.