RICHARD MATTHEWS, Jr., INC., dba The Matthews Company; and THE MATTHEWS COMPANY, Sole General Partner of NORTHERN NEVADA COMPANY, a Limited Partnership, Appellants, v. NORMAN G. VAUGHN, Respondent.

No. 7352

NORTHERN NEVADA COMPANY, a Limited Partnership, Appellant, v. NORMAN G. VAUGHN, Respondent.

No. 7480

September 29, 1975                    540 P.2d 1062

*Vargas, Bartlett & Dixon,* and *Fred Starich,* of Reno, for Appellant Matthews.

*Beckley, DeLanoy & Jemison,* of Las Vegas, for Appellant Northern Nevada Company.

*Echeverria and Osborne,* and *John Conner,* of Reno, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

*Case No. 7352.*

In this action by an employee against his employer to recover damages for personal injuries arising out of and in the course of his employment, the jury favored the employee with its verdict in the sum of $100,000 which is not challenged as excessive. The employer had rejected the provisions of the Nevada Industrial Insurance Act. By this appeal the employer primarily contends that the trial court committed prejudicial error by ruling that the employer could not argue or infer that the negligence of the employee was the sole proximate cause of his injury. Other contentions also are tendered and will be considered.

Norman Vaughn was employed by Richard Matthews, Jr., Inc., dba The Matthews Company, as a maintenance man for apartments managed by the company. On the day of injury he was preparing an apartment for occupancy. He intended to vacuum the carpet and then shampoo it. The vacuum cleaners usually available were not available on that occasion. Consequently, he attempted to use a vacuum cleaner which he found abandoned in a vacated apartment. Upon activating it, he noticed a clicking sound. He placed the vacuum cleaner on the floor and removed the head so that the blades were exposed.

Because of the lighting he found it more convenient to place the vacuum cleaner on the bed. He then tried the switch on the vacuum cleaner and there was no response. He proceeded to the wall switch to insure that the power was on. Again, no response. He walked back to the bed and tried the switch on the vacuum cleaner a second time. He was leaning directly over the cleaner. The vacuum cleaner activated, and the blades thereof partially amputated his penis. There previously had been problems with the wall sockets and switches at the apartments. Vaughn's theory of recovery was the employer's failure to provide reasonably safe tools or appliances or a reasonably safe place to work. NRS 616.300(1)(a)(2)(3).

1. Vaughn entered the case with the presumption that the employer was negligent and that such negligence was the proximate cause of the injury which he sustained. NRS 616.300.[1] As

---

[1]NRS 616.300: "1. If an employer having the right under NRS 616.290 to accept the terms, conditions and provisions thereof shall fail

applied to this case, the employer is presumed to have breached his duty to provide Vaughn with a reasonably safe vacuum cleaner, or a reasonably safe place to work. All that Vaughn needed to allege and prove was the relationship of employer-employee, an injury arising out of and in the course of his employment, damages, and the rejection of the Nevada Industrial Insurance Act by the employer. Reeder v. Pincolini, 59 Nev. 396, 402, 94 P.2d 1097 (1939). He was under no duty to prove negligence. It was the employer's burden to rebut the statutory presumption of his negligence and of proximate cause.

to accept the same as provided in this chapter, every such employer shall be deemed to have rejected the terms, conditions and provisions thereof, and in such case such employer shall not escape liability for personal injury by accident sustained by an employee of such employer when the injury sustained arises out of and in the course of the employment because:

"(a) The employee assumed the risks:

(1) Inherent or incidental to, or arising out of, his employment; or

(2) Arising from the failure of the employer to provide and maintain a reasonably safe place to work; or

(3) Arising from the failure of the employer to furnish reasonably safe tools or appliances.

"(b) The employer exercised reasonable care in selecting reasonably competent employees in the business.

"(c) The injury was caused by the negligence of a coemployee.

"(d) The employee was negligent, unless and except it shall appear that such negligence was willful and with intent to cause the injury or the result of intoxication on the part of the injured party.

"2. In actions by an employee against an employer for personal injuries sustained arising out of and in the course of the employment where the employer has rejected the provisions of this chapter, it shall be presumed that the injury to the employee was the first result and growing out of the negligence of the employer, and that such negligence was the proximate cause of the injury. In such case the burden of proof shall rest upon the employer to rebut the presumption of negligence.

"3. Every such employer shall be conclusively presumed not to have elected to provide and secure compensation to employees for injuries sustained arising out of and in the course of the employment according to the provisions of this chapter, unless and until notice in writing of an election to accept shall be given to the commission, substantially in the following form:

Nevada Industrial Commission
Carson City, Nevada

The undersigned employer engaged in the business of ...................
....................., at ........................................, Nevada, hereby elects to accept the provisions of the Nevada Industrial Insurance Act.

Dated at ........................................, this ............ day of ........................., 19.........

........................................................
(Signature of Employer)"

Cahow v. Michelas, 62 Nev. 295, 149 P.2d 233 (1944); Reeder v. Pincolini, supra.

The common law defenses of assumed risk, negligence of a coemployee, and contributory negligence were, by the Act (NRS 616.300) removed from the case, and could not be utilized by the employer in an effort to defeat his employee's claim for relief. Indeed, only the employee's willful negligence with intent to cause injury, or injury as the result of the employee's intoxication may be offered in defense to the claim. The record in this case contains nothing to suggest either.

The rules just expressed are not disputed by the employer-appellant. The employer does, however, strenuously assert that he was entitled to argue that the employee's negligence was the sole proximate cause of the accident and, moreover, that the court should have given his offered jury instruction to that effect. We do not agree.

Although true that the employer may not be held liable in the total absence of negligence on his part [Day v. Cloke, 47 Nev. 75, 215 P. 386 (1923); Cahow v. Michelas, 62 Nev. 295, 149 P.2d 233 (1944)], it is his burden to prove his due care and thus rebut the statutory presumption. The statutory expression "in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence" is referable to the employer's conduct, and not to the conduct of the employee.[2] The employee's lack of due care for his own safety is of no moment unless willful with the intent to cause injury, or the result of intoxication. This is the penalty the employer must suffer for his failure to accept the provisions of the Nevada Industrial Insurance Act.

In the case at hand we think that it was within the province of the jury to find that the presumption of employer negligence and proximate cause was not rebutted. The defense centered upon the employee's conduct which, for reasons already stated, could not be utilized to avoid liability. And, with regard to the employer's conduct, the jury may well have believed that, in addition to presumed negligence, the employer breached his duty of ordinary care when he failed to provide the employee

[2]We reject contrary expressions contained in opinions from other jurisdictions under similar, but not identical, statutes. See: Haralson v. Rhea, 259 P.2d 246 (Ariz. 1953); Potter v. Garner, 407 S.W.2d 537 (Tex.Civ.App. 1966).

with a vacuum cleaner that sounded to be in good working order and reasonably safe for use. In any event, nothing was submitted with regard to the employer's conduct to rebut the presumption of negligence and proximate cause.

2. The employer moved for a mistrial which motion was denied. This ruling is assigned as error. Counsel for the employee asked a question which suggested that the employer managed rental properties valued in excess of seven million dollars. This question prompted the motion for mistrial since the court, at the beginning of the trial granted the employer's motion in limine to preclude mention of the employer's net worth or financial standing.

Perhaps the question violated the spirit of the preclusive order. However, this assigned error is unsupported by reference to authority, and we are not prepared to assume that it affected the substantial rights of the parties. Howarth v. El Sobrante Mining Corp., 87 Nev. 492, 489 P.2d 89 (1971); NRCP 61.

3. We deem other assigned errors insubstantial. The judgment in case No. 7352 is affirmed.

*Case No. 7480.*

The action considered in case No. 7352 was tried by the employee, Vaughn, against his employer, Richard Matthews, Jr., Inc., doing business as The Matthews Company. Service of process was made upon the resident agent of The Matthews Company.

Trial evidence disclosed that the Garden Hill Apartments where the employee was working when injured was owned by a limited partnership called Northern Nevada Company in which The Matthews Company was the general partner and four individual investors were the limited partners. The Matthews Company managed the apartments for Northern Nevada Company.

Northern Nevada Company was never made a party to the action. Process served upon the resident agent of The Matthews Company did not indicate that The Matthews Company was being sued in its capacity as the general partner of the limited partnership, Northern Nevada Company.

However, because of the evidentiary disclosure, the trial court allowed the jury verdict and judgment thereon to run not only against Richard Matthews, Jr., Inc., doing business as The Matthews Company but, as well, against The Matthews Company as sole general partner of Northern Nevada Company, a limited partnership.

Following judgment, execution was made against the property of Northern Nevada Company. Rents received from tenants of its properties were levied upon. This prompted Northern Nevada to file a third party claim which the district court denied, and from which denial Northern Nevada has appealed.

1. The employee, Vaughn, never asserted a claim for relief against the limited partnership, Northern Nevada Company. NRS 12.110 provides: "When two or more persons, associated in any business, transact such business under a common name, whether it comprise the names of such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates, in the same manner as if all had been made defendants and had been sued upon their joint liability."

Although a partnership is not a separate legal entity in the sense that a corporation is a legal entity, it is deemed a legal entity for the purposes of pleading and defending litigation. Ruzicka v. Rager, 111 N.E.2d 878 (N.Y. 1953). A claim against a conventional partnership may be asserted by filing suit against the partnership in its common name and serving one or more of the partners as authorized by NRS 12.110, or by an action naming all of the partners. The second alternative is not available in an action against a limited partnership because of the provisions of NRS 88.270: "A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."

The employee did not sue the limited partnership, Northern Nevada Company, in its common name and serve process upon the general partner thereof as such general partner. The district court apparently believed that a limited partnership may properly be sued by naming only the general partner without, in any way, describing its capacity as such.

Process is the means by which a claimant may bring his alleged oppressor before the court and should afford reasonable notice of the pendency of suit against the oppressor and an opportunity to be heard. This must be done if the fundamental demands of due process are to be satisfied.

In the case at hand, Northern Nevada Company, a limited partnership, was never notified that a suit was pending against

it. Neither was it afforded an opportunity to be heard. Had it been so notified and afforded such an opportunity, its defenses to the claim for relief asserted by Vaughn may well have been different than those available to The Matthews Company, the employer of Vaughn. Perhaps the common law defenses of assumed risk and contributory negligence could have properly been asserted, even though not available to The Matthews Company. We do not know since the evidence adduced at trial did not explore in sufficient depth the relationship existing between The Matthews Company and the Northern Nevada Company in the operation of the Garden Hill Apartments. We are not apprised whether Northern Nevada Company was obliged to accept the terms of the Nevada Industrial Insurance Act and would suffer the same penalties for its failure to do so as did The Matthews Company.

In these circumstances, execution upon the properties of Northern Nevada Company in satisfaction of a judgment against The Matthews Company is void, since Northern Nevada has never had its day in court.

Reversed.

GUNDERSON, C. J., and BATJER, ZENOFF, and MOWBRAY, JJ., concur.